DONAHUE ET AL., APPELLANTS, *v.* CARDINAL CONSTRUCTION CO. ET AL., APPELLEES.

EVANS, DIR., ET AL., APPELLANTS, *v.* BAUDER ELECTRIC, INC. ET AL., APPELLEES.

(Nos. 1875 and 1876—Decided December 14, 1983.)

*Mr. Cornelius J. Baasten* and *Ms. Joan A. Kodish,* for appellant Robert Donahue.

*Mr. Lincoln Oviatt,* for appellee Cardinal Construction Co.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Simon B. Karas,* for appellant Helen Evans, Director of the Ohio Dept. of Industrial Relations.

*Mr. Jerry Bauder,* for appellee Bauder Electric, Inc.

*Mr. N. Victor Goodman* and *Mr. John J. Duffey,* urging reversal for *amicus curiae,* Ohio State Bldg. & Constr. Trades Council.

GEORGE, J. The ultimate question to be decided by this appeal is whether Ohio's prevailing wage law (R.C. 4115.03 through 4115.15) is constitutional. This court holds that it is and reverses the judgment of the trial court.

The defendants-appellees, Cardinal Construction Co. ("Cardinal"), United States Fidelity and Guaranty Co. ("United") and Bauder Electric Co., Inc. ("Bauder"), participated in the construction of the Rittman Health Care Center. This construction was financed through the issuance of industrial development bonds. Therefore, under R.C. 165.031, it was subject to Ohio's prevailing wage law.

Plaintiff-appellant Robert Donahue, an employee of Cardinal, filed a complaint against Cardinal and United (the insurer of Cardinal's performance of the construction contracts), claiming that Cardinal failed to pay him the prevailing wage. In a separate action relating to the same construction project, plaintiff-appellant Helen Evans, acting in her capacity as director of the Ohio Department of Industrial Relations, filed a complaint

against Cardinal and Bauder, alleging that they violated the prevailing wage law by failing to pay their employees the prevailing wage. These cases were consolidated by the trial court.

On March 31, 1983, the trial court granted the appellees' motions to dismiss, ruling that the prevailing wage law was unconstitutional. The appellants filed separate notices of appeal from this judgment. These cases were consolidated for purposes of appeal.

The assignments of error raised by the appellants concern the constitutionality of the prevailing wage law. Law-making power is conferred upon the legislature (Section 1, Article II of the Ohio Constitution). Further, the legislature cannot delegate that power to any other body or person. It is axiomatic that a court's duty is to reconcile a legislative act with a constitutional provision, if at all possible. The declaration that legislation is a nullity is to be approached with caution and deliberation. Therefore, the court must indulge in a strong presumption in favor of the constitutionality of legislation. *Ohio Public Interest Action Group* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175 [72 O.O.2d 98], paragraph four of the syllabus. Thus, in order to invalidate a statute, there must exist a repugnancy between the statute and the Constitution which is incapable of a fair reconciliation.

R.C. 4115.04 provides that mechanics and laborers on various publicly funded projects are to be paid the prevailing rate of wages. This section establishes the legislative policy that mechanics and laborers on public works are to be paid at least as much as mechanics and laborers receive for similar work in the private sector.

The issue before this court concerns the method used in making the determination of the prevailing wage. This method is set forth in R.C. 4115.05, which reads, in part:

"The prevailing rate of wages to be paid for a legal day's work, as prescribed in section 4115.04 of the Revised Code, to laborers, workmen, or mechanics upon public works shall not be less at any time during the life of a contract for the public work than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work is being performed, under collective bargaining agreements or understandings, between employers and bona fide organizations of labor in force at the date the contract for the public work, relating to the trade or occupation, was made, and collective bargaining agreements or understandings successor thereto.

"* * *

"In event there is no such collective bargaining agreement or understanding in the immediate locality, then the prevailing rates of wages in the nearest locality in which such collective bargaining agreements or understandings are in effect shall be the prevailing rate of wages, in such locality, for the various occupations covered by sections 4115.03 to 4115.16 of the Revised Code."

The appellees argue that the determination of the prevailing wage under this statute constitutes an unconstitutional delegation of legislative authority to private parties, thus violating Section 1, Article II of the Ohio Constitution. *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329 [28 O.O. 295]. Appellees' position is based on the argument that the Ohio Department of Industrial Relations is mandated to rely solely on union contracts in establishing the minimum prevailing wage. Thus, they argue that the department, in effect, had no discretion in establishing those rates, and that the department's only function was to ascertain these rates for the determination of the prevailing wage. Therefore, appellees contend the private parties, the labor organizations and the employers, were setting the prevailing wage. Such a delegation of authority has been held to be unconstitutional in other jurisdictions. See *Indus. Comm.* v. *C & D*

*Pipeline, Inc.* (App. 1979), 125 Ariz. 64, 607 P. 2d 383.

On the other hand, the appellants argue that reliance on the union rate does not make the Ohio statute unconstitutional. The decision of the Michigan Court of Appeals in *West Ottawa Public Schools v. Director, Dept. of Labor* (1981), 107 Mich. App. 237, 309 N.W. 2d 220, supports the position of the appellants. In that case, the court of appeals reversed the trial court's ruling that Michigan's prevailing wage law constituted an unlawful delegation of legislative power. In holding that the Michigan statute was constitutional, the court reasoned:

"* * * Plaintiffs maintain that the prevailing wage statute is constitutionally defective because it delegates to the unions, or to the unions and contractor/employers together, the authority to determine the wage rate on state projects. The statute contains no such delegation. Rather, the statute expresses the policy that wages equal to union scale are to be paid to both union and non-union workers on public construction projects. The Legislature did not confer on the unions and the contractor/employers the power to set the prevailing wage rate for public contracts. It merely adopted, as the critical standard to be used by the Department of Labor in determining prevailing wage, the wage rate arrived at through a collective bargaining process which is completely unrelated to and independent of the prevailing wage statute. * * *" *Id.* at 245-246.

The reasoning in *West Ottawa Public Schools* v. *Director, supra,* is consistent with the position that the Ohio Supreme Court took in *Fuldauer* v. *Cleveland* (1972), 32 Ohio St. 2d 114 [61 O.O.2d 374]. In that case, the electors of the city of Cleveland amended the city charter to establish a formula for setting the salaries for the city's police and fire department employees. The two amendments required the salaries to be set at a rate three percent higher than the highest rate paid to employees similarly situated in other large Ohio cities. Fuldauer, a taxpayer, challenged the constitutionality of those amendments, arguing that the procedure for setting the salaries constituted an unlawful delegation of the city's legislative authority to those persons who established the salaries in the other localities.

The Ohio Supreme Court upheld the constitutionality of these amendments, ruling that they did not constitute an unlawful delegation of legislative power. The court stated:

"* * * By these charter amendments the electors of Cleveland, in the exercise of their power of local self-government, have determined how the wages of their firemen and policemen shall be established and have provided that the city council must adopt the rates established by the wage formula fixed by the procedure described in such sections. These electors, in the two charter amendments, have imposed upon council the obligation of ascertaining certain facts upon which the legislative policy established in the charter will be effectuated." *Id.* at 119-120.

"The formula for salary adjustments, which we have before us in these charter amendments, that tie the adjustments into future events which do not lie within the power or control of the council does not constitute an unlawful delegation of power. It is not unlike a formula which links the wage adjustment to the cost of living index, to average earnings or prevailing wages of a comparable occupation, or to average earnings or prevailing wages generally." *Id.* at 121.

As in *Fuldauer* v. *Cleveland, supra,* the determination of the prevailing wage is based on wages set by those over whom the legislature has no supervision or control. Although the operation of the statute is dependent on the actions of private parties, this fact does not invalidate the law.

The law expresses the policy that wages equal to union scale are to be paid to both union and nonunion workers on

public projects. The legislature did not confer on the unions or employers the power to set the prevailing wage rate for public contracts. It merely adopted, as the critical standard to be used by the Department of Industrial Relations in determining the minimum prevailing wage, the wage rate arrived at through a collective bargaining process. The purpose of collective bargaining is not to set the wage rate for public projects, but rather to set the wage rate in the private sector.

Accordingly, this court holds that the prevailing wage law is constitutional. The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with the law and this opinion.

*Judgment reversed and case remanded.*

MAHONEY, P.J., and BAIRD, J., concur.